## STATE OF CONNECTICUT *v.* ROBERT DROUIN
### (4773)
### (4832)

HULL, SPALLONE and COVELLO, Js.

Argued April 7—decision released August 18, 1987

*Austin J. McGuigan,* with whom were *Lisa J. Barry* and *M. Daniel Friedland,* for the appellant (defendant in both cases).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *Carl Taylor,* assistant state's attorney, and *Cheryl Petrucci,* law student intern, for the appellee (state).

COVELLO, J. The dispositive issue in this case is whether the circumstances, length and content of the court's examination of the defendant before the jury constituted error. We conclude that it did and order a new trial.[1]

On June 2, 1985, police officers stopped the defendant in his automobile in response to a complaint by a former girlfriend that the accused was harassing her. In the course of taking him into custody, a scuffle occurred which the officers claimed was the product of the accused's resistance to a lawful arrest.

The defendant testified in his own behalf, claiming that not only was he not the aggressor, but, in reality, he had been the victim of a totally unwarranted police assault. In support of his claim he introduced the record of his emergency room examination and treatment and a series of photographs of his face and body taken shortly after the incident. In view of the conflicting claims as to what had occurred, the credibility of the witnesses was the key factual issue confronting the jury.

The examination and cross-examination of the defendant was lengthy. Its content occupies 103 pages

---

[1] As the result of the defendant's conviction for the offenses which are the subject matter of this appeal (Docket No. 4773), he was found to be in violation of a previously imposed term of probation incident to an earlier conviction. He was sentenced to serve the unexpired portion of the original term of imprisonment. He appealed that judgment to this court. (Docket No. 4832). Inasmuch as the first judgment (Docket No. 4773) is now set aside, there is no longer any factual basis for the conclusion that a probation violation has occurred. Therefore the appeal in the second case (Docket No. 4832) is sustained, the judgment is set aside and the case remanded for further proceedings.

of the transcript. At the conclusion of this examination, the court embarked on its own examination of the accused which occupies an additional 14 pages of text. The questions focused on the accused's version of how he was struck with a police baton. The court thereafter, had the accused show the jury where in the photographs there could be seen the results of his alleged beating.[2] The form, length and extent of the examination make it evident that the court had doubts concerning the accused's credibility.

---

[2] "The Court: Now, this is the same type of instrument that you were beaten on the back with, is that correct?

"Mr. Drouin: Yes.

"The Court: And beaten on the top of the head?

"Mr. Drouin: Yes.

"The Court: *But there's no evidence*—I mean, you can't see that because your hair covers it, is that correct?

"Mr. Drouin: All right. . . .

"The Court: Now, that instrument went into your eye and can you show me any—any black and blue marks around your eyes?

"Mr. Drouin: Right there (indicating).

"The Court: Is that the black and blue?

"Mr. Drouin: The yellow and red there (indicating). Can you see it?

"The Court: *Well, maybe I can see it in the other eye, too* . . . .

"The Court: . . . Show the black and blue marks then, would you?

"Mr. Drouin: The marks where they —

"The Court: *No, not the marks. The black and blue marks. I mean, that's what a beating with a club would cause, isn't it? Aren't those abrasions?* . . .

"The Court: Didn't the doctor say that these were abrasions on your back. He didn't say these were any ecchymoses or —

"Mr. Drouin: Yes.

"The Court: —ecchymosis.

"Mr. Drouin: Right in the report, your honor.

"Mr. Friedland: It's right in the report, your honor.

"The Court: Show me where it is.

"Mr. Friedland: I'll show it to you.

"The Court: On his back?

"Mr. Drouin: Yeah.

"Mr. Friedland: 'Ecchymosis over back—abrasions and ecchymosis over back.'

"The Court: All right.

"Mr. Friedland: It's right in the report.

"The Court: Show it to me in the photograph. That's what I want to see. . . ." (Emphasis added.)

Early decisions have afforded the trial court sound discretion to ask repeated questions of a witness. "The judge must be in a position to comment upon the facts fully and intelligibly to the jury. He must be able to accurately determine whether a verdict should be directed, or if rendered it should be set aside. To perform these judicial functions understandingly he must be permitted to ascertain by questioning what the facts are, *and to test the credibility of the witness.* Not alone as a help to him but as a help to the jury, he must be permitted to question the witness and place before the jury the facts in their true relation and to give them the opportunity to judge the *credibility* of the witness." (Emphasis added.) *State* v. *Cianflone,* 98 Conn. 454, 468, 120 A. 347 (1923). "Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion." Id., 469.

This strong position authorizing a wide role to be taken by the court in the questioning has been eroded in recent decisions, however, where the issue involves credibility. See *State* v. *Smith,* 200 Conn. 544, 550, 512 A.2d 884 (1986); *State* v. *Fernandez,* 198 Conn. 1, 15, 501 A.2d 1195 (1985); *State* v. *Camerone,* 8 Conn. App. 317, 325, 513 A.2d 718 (1986).

The prevailing view now is that "[w]here credibility [is] so significant . . . a trial judge should eschew an examination of a key witness which might easily have given the jury the impression that the court had doubts concerning the truthfulness of his testimony on a crucial issue." *State* v. *Fernandez,* supra, 15. "[T]he court should avoid questioning witnesses in a manner that reflects in any fashion on their credibility." *State* v. *Smith,* supra, 550.

"Due process requires that 'there should be no questioning that appears to reject a defendant's credibility and implies judicial support of a prosecution witness' testimony. . . .' *State* v. *Fernandez*, [supra, 12]." *State* v. *Camerone*, supra, 325.

The state claims that the court's subsequent charge to the jury to make its own judgments concerning credibility, eliminated the effects of any alleged prejudicial questioning. "[T]his court has traditionally given great weight to curative instructions in assessing a defendant's claim of prejudice. . . ." *State* v. *Smith*, supra, 552. " '[A] curative instruction is not inevitably sufficient to overcome . . .' the impact of prejudice. *State* v. *Tinsley*, 180 Conn. 167, 170, 429 A.2d 848 (1980) . . . ." *State* v. *Fernandez*, supra, 17. We find the relevant instruction here[3] to be of no greater moment than the instruction rejected by the court in *State* v. *Fernandez*, supra.[4] Accordingly, "we are persuaded . . . that the prejudicial impact of the examination [by the court] . . . has probably overborne reasonable juror conscientiousness [and we must] decline to accept

---

[3] The trial court's instruction provided in part: "If I have made any reference to the position of the state or the accused, I assure you it is not my intention to convey to you directly or indirectly how the court feels as to what should be the outcome of the case.

"I might point out that during the trial any comments made by the court or any questions asked by the court are not intended to in any way convey the court's impression of this case as to whether the defendant is guilty or not guilty of any of the charges against him. You're not to make that surmise. The decision in this case as to the facts rests in your hands and in your hands alone."

[4] "[Y]ou are not to infer or take any meaning from the intonation of my voice or the manner in which the court has replied to or spoken to counsel or witnesses in the course of the trial. Be as objective and as fair as you can in weighing the credibility of the witnesses you have heard. Do not feel, as a result of any questions I may have asked any witness, that I have endorsed, accepted, or rejected so much of the testimony which I inquired about, as it is in no way intended to remove the testimony from your consideration as to its credibility." See *State* v. *Fernandez*, 198 Conn. 1, 16–18, 501 A.2d 1195 (1985).

the claimed efficacy of a curative instruction. This is one of those rare cases when we are so persuaded." *State* v. *Fernandez,* supra, 17–18.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.